## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Philadelphia Indemnity Insurance Company, | Case No.: 0:24-cv-02600-SRN-ECW |
| Plaintiff, | **ORDER** |
| v. | |
| Melon Investments, Inc., *doing business as* Bridges MN; Aldrich Boarding Care Home, LLC, *doing business as* Bridges MN; & Denise Cook, *as legal guardian for N.C., a vulnerable adult*, | |
| Defendants. | |

Erin D. Doran and Stacy A. Broman, Meagher & Geer, PLLP, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402, for Plaintiff.

Janine M. Loetscher and Jeffrey R. Mulder, Bassford Remele, 100 South Fifth Street, Suite 1500, Minneapolis, MN 55402, for Defendants Melon Investments, Inc. and Aldrich Boarding Care Home, LLC.

Andrew M. Irlbeck, 332 Minnesota Street, Suite W1610, St. Paul, MN 55101; and Joseph T. Heegaard and Paul Convery Dworak, Storms Dworak LLC, 222 South Ninth Street, Suite 470, Minneapolis, MN 55402, for Defendant Denise Cook.

SUSAN RICHARD NELSON, United States District Judge

Defendant Denise Cook sued Defendants Melon Investments, Inc. and Aldrich Boarding Care Home, LLC (both doing business as Bridges MN) in state court for negligence. (Doc. 35-3.) Bridges' insurer, Plaintiff Philadelphia Indemnity Insurance Company (PIIC), then sued Defendants in this Court seeking a declaration that it has

no duty to defend or indemnify Bridges. (Doc. 1.) This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons below, PIIC's Motion for Summary Judgment [Doc. 37] is granted, and Defendants' Motions for Summary Judgment [Docs. 32 & 45] are denied.

## I.    BACKGROUND

The Court accepts as true the facts as alleged in the Amended Complaint [Doc. 35-3] in the underlying state action.

Cook's great nephew and legal ward, N.C., is a vulnerable adult who lives in a group home. (Doc. 35-3 ¶¶ 1–2.) He "suffers from numerous medical disorders," including developmental and intellectual disabilities, and he "has a history of being sexually exploited and abused, including by a staff member in a group home." (*Id.* ¶¶ 4–5.) As a result, he "does not understand personal and sexual boundaries," and he has a Coordinated Services and Supports Plan (CSSP) requiring supervision twenty-four hours a day to ensure his and others' safety. (*Id.* ¶¶ 6–8.)

Around October 2020, Bridges housed N.C. and provided adult care services for him. (*Id.* ¶ 37.) Bridges knew the requirements of N.C.'s CSSP and told Cook that N.C. would never be left alone with females. (*Id.* ¶¶ 38–46.) Yet Bridges placed N.C. in a group home with three other residents, including a female, and failed to supervise them for hours at a time. (*Id.* ¶¶ 44–55.) During these unsupervised periods, N.C. and the female resident "willingly engaged in sexual activity" to which they were "both unable to legally consent." (*Id.* ¶ 50, 56.)

In January 2022, N.C. told a staff member about his "sexual relations." (*Id.*

¶ 49.)  This disclosure led to a maltreatment investigation by the Minnesota Department of Human Services (DHS), which "revealed that Bridges failed to train staff members on N.C.'s safety plan or CSSP" and "was responsible for maltreatment of N.C. and the female resident."  (*Id.* ¶¶ 51–59.)  DHS also discovered "widespread neglect and abuse of residents" at Bridges' other homes, so it revoked Bridges' license to operate in Minnesota.  (*Id.* ¶¶ 60–61.)

Unfortunately, N.C. was also charged with two counts of criminal sexual conduct.  (*Id.* ¶¶ 62–63.)  He was eventually acquitted because the state did not prove that he "knew or believed or had reason to know that, at the time of the sexual contact, the [female resident] was mentally impaired"—but not before he endured seventeen months of "restrictive probation" while his case moved through the courts.  (*Id.* ¶¶ 65–68.)  For nearly a year and a half, N.C. was "forced to live in fear that he could go to prison or be civilly committed for life" and "forced to live in isolation away from friends and family."  (*Id.* ¶¶ 69, 74.)  He was placed in a home without roommates, "prevented from having contact with any other vulnerable adults," and barred from attending outside activities like the Special Olympics and his sister's sporting events.  (*Id.* ¶¶ 70–73.)

Cook sued Bridges in state court for negligence, alleging that "[a]s a direct and proximate result of Bridges' actions, N.C. sustained and will continue to sustain pain and suffering, including emotional distress, humiliation, embarrassment, future counseling, and other damages."  (*Id.* ¶ 76.)  Bridges' insurer, PIIC, then sued both Cook and Bridges in this Court seeking a declaratory judgment that it has no duty to

defend Bridges. (Doc. 1 at 1, 17.) The parties each moved for summary judgment. (Docs. 32, 37, 45.) And the Court received thorough briefing and oral argument. (Docs. 34, 39, 47, 54, 55, 57, 58, 59, 61, 62.)

## II.    DISCUSSION

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The interpretation of an insurance policy is a matter of law which the Court can determine on summary judgment." *State Farm Fire & Cas. Co. v. ARC Mfg., Inc.*, 11 F. Supp. 3d 898, 903 (D. Minn. 2014).

Because "jurisdiction is based on diversity," the Court applies Minnesota's substantive law. *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012). Under Minnesota law, the "insurer's duty to defend an insured is contractual." *Meadowbrook, Inc. v. Tower Ins.*, 559 N.W.2d 411, 415 (Minn. 1997). "The duty to defend is broader than the duty to indemnify." *Id.* (citing *St. Paul Fire & Marine Ins. v. Lenzmeier*, 243 N.W.2d 153, 156 (Minn. 1976)). If even one claim is "arguably" covered by the policy, the insurer must defend all claims against the insured. *Murray v. Greenwich Ins.*, 533 F.3d 644, 648 (8th Cir. 2008) (quoting *Jostens, Inc. v. Mission Ins.*, 387 N.W.2d 161, 165 (Minn. 1986)). Once the insured presents facts that arguably demonstrate coverage, "the insurer has the 'heavy burden' of proving no duty to defend exists." *Id.* (citing *Prahm v. Rupp Constr. Co.,* 277 N.W.2d 389, 390 (Minn. 1979)).

"To determine if a duty to defend or indemnify exists," the Court "compares the allegations in the complaint of the underlying action against the relevant language in

- 4 -

the insurance policy." *Westfield Ins. v. Robinson Outdoors, Inc.,* 700 F.3d 1172, 1174 (8th Cir. 2012) (citing *Meadowbrook,* 559 N.W.2d at 415). The Court "must interpret clear and unambiguous policy language 'according to plain, ordinary sense so as to effectuate the intentions of the parties.'" *W3i Mobile, LLC v. Westchester Fire Ins.*, 632 F.3d 432, 436 (8th Cir. 2011) (quoting *Carlson v. Allstate Ins.*, 749 N.W.2d 41, 45 (Minn. 2008)). If language is ambiguous, the Court will construe it in favor of the insured, but the Court may not "read an ambiguity into the plain language of" the policy. *Id.* (quoting *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn. 1989)).

Throughout the briefing, the parties discuss three different potential sources of coverage in Bridges' insurance policy with PIIC: (1) the Abusive Conduct Liability Coverage Form; (2) the Human Services Organization Professional Liability Coverage Form, which has an Absolute Abuse or Molestation Exclusion; and (3) the Commercial General Liability Coverage Form, which has both a Professional Incident Exclusion and an Abuse or Molestation Exclusion. In the end, they agree that no coverage is available under the Abusive Conduct Liability Coverage Form or the Professional Liability Coverage Form.[1] So only the Commercial General Liability Coverage

---

[1] Cook and Bridges do not dispute that Bridges exhausted its coverage under the Abusive Conduct Liability Coverage Form through a settlement with the female resident. (*See, e.g.*, Doc. 34 at 22; Doc. 39 at 18–21; Doc. 47 at 2; Doc. 57 at 8 n.3; Doc. 59 at 1 n.1.) And the parties agree that the Amended Complaint does not allege claims related to a "professional incident," rendering the Human Services Organization Professional Liability Coverage Form inapplicable. (Doc. 55 at 17–18; Doc. 58 at 2; Doc. 59 at 14–15; Doc. 61 at 10.)

(CGLC) Form remains at issue.

The CGLC Form covers, as relevant here, "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies."  (Doc. 41-4 at 390.)  It generally defines "bodily injury" as only "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  (*Id.* at 402.)  But a "Deluxe Endorsement" expands the definition.  (*See id.* at 429–30.)  It says,

> "Bodily injury" means:
>
> **a.** Bodily injury, sickness, or disease sustained by a person, and includes mental anguish resulting from any of these; and
>
> **b.** Except for mental anguish, includes death resulting from the foregoing (Item **a.** above) at any time.

(*Id.* at 439.)

PIIC argues that the allegations in the Amended Complaint do not meet this definition.  (Doc. 55 at 15–17.)  It points out that the Amended Complaint alleges only mental injuries—not bodily injury, sickness, or disease.  (*Id.*)

The Court agrees.  Under Minnesota law, "[e]motional distress is not an injury to the body, but to the psyche."  *Garvis v. Emps. Mut. Cas. Co.*, 497 N.W.2d 254, 257 (Minn. 1993).  "An injury to the body does not include nonbodily emotional distress."  *Id.*  All the alleged injuries in the Amended Complaint are either emotional or pecuniary.  The relevant paragraphs state:

> 75.  The isolation, confusion, court restrictions, and fear of prison, took a toll on N.C.'s mental health and set back the progress that he had been making in coping with his mental

disabilities.

76. As a direct and proximate result of [ ] Bridges' actions, N.C. sustained and will continue to sustain pain and suffering, including emotional distress, humiliation, embarrassment, future counseling, and other items of damages.

. . .

84. Bridges and its employees owed N.C. a duty to provide him with care and supervision that was reasonable and necessary to maintain his physical and mental health and safety.

85. Bridges and its employees breached their duty of care to N.C.[ ] by[,] among other things, the actions described above.

86. N.C. has endured and continues to endure emotional distress, suffering, humiliation, embarrassment, legal and expert fees, medical expenses, and other items of compensatory damages as a direct and proximate result of this wrongful conduct.

(Doc. 35-3 ¶¶ 75–86.) Unlike in cases where Minnesota courts have found bodily injury, these paragraphs do not include even a conclusory statement that N.C. sustained a bodily injury, sickness, or disease, let alone identify a specific physical injury that N.C. suffered. *Cf. Meadowbrook*, 559 N.W.2d at 419 (rejecting insurer's argument that underlying complaint insufficiently alleges bodily injury where "[e]ach of the plaintiffs in the underlying action asserted in the complaint that she suffered 'bodily injuries' as a result of the insure[d]'s alleged acts of sexual harassment"). And although the Deluxe Endorsement expands the definition of bodily injury to include mental anguish, the mental anguish must *result from* a bodily injury, sickness, or disease.

As Cook acknowledges elsewhere in the briefing, she "did not allege N.C.

- 7 -

suffered genital bruising, sexually transmitted diseases, or subsequent sexual disfunction.    Instead, her alleged injuries include N.C.'s emotional distress, embarrassment, developmental setbacks, false and discriminatory criminal charges, and the subsequent restrictive probation, isolation, and fear." (Doc. 34 at 17–18.)  Genital bruising, sexually transmitted diseases, and sexual disfunction are bodily injuries.  Emotional distress, embarrassment, developmental setbacks, criminal charges, probation, isolation, and fear are not.  While the Amended Complaint does mention "pain and suffering," that phrase is immediately followed by a list of *emotional* pain and suffering.  (Doc. 35-3 ¶ 76.)  And while it also mentions "medical expenses and other items of compensatory damages," these generic terms immediately follow "emotional distress, suffering, humiliation, embarrassment, [and] legal expenses."  (*Id.* ¶ 86.)  The Amended Complaint does not indicate that these expenses came from a physical injury rather than a mental one.

Even without a direct physical injury, Minnesota law considers emotional distress a bodily injury if it has "appreciable physical manifestations."  *E.g.*, *Garvis*, 497 N.W.2d at 257; *see also TIG Ins. v. Missionary Oblates of Mary Immaculate*, No. 20-cv-2261 (ECT/JFD), 2023 WL 7001760 (D. Minn. Oct. 24, 2023) (discussing the "controlling Minnesota rule that emotional distress is not 'bodily injury' unless that emotional distress is accompanied by appreciable physical manifestations").  But the Amended Complaint also fails to allege any physical manifestation of N.C.'s emotional distress.

The Minnesota Supreme Court's decision in *Garvis* is controlling here.  In that

case, the plaintiff was involved in a serious car accident that was not covered by insurance because an insurance agent failed to process her application. *Garvis*, 497 N.W.2d at 255. She sued the agent, alleging that his "conduct"—including calling her in the hospital to tell her that she was uninsured—"did cause her extreme and severe emotional distress." *Id.* at 257. The agent settled the lawsuit and then sought coverage from his own insurer for the liability. *Id.* at 256. The Minnesota Supreme Court found that the agent's insurer had no duty to defend or indemnify him because the plaintiff did not allege a bodily injury. *Id.* at 257. The court rejected the plaintiff's argument that the court should assume, "in view of the allegation of emotional distress, that there were physical manifestations." *Id.* at 258. It noted that "[n]ot every case of emotional distress results in physical manifestations" and plaintiffs sometimes try "to recover for emotional suffering alone, notwithstanding [the court's] cases to the contrary." *Id.* In its view, the plaintiff "would have alleged facts necessary to implicate coverage, if, in fact, physical manifestations of her distress had occurred as a result of the agent's phone call." *Id.*

As in *Garvis*, the Court may not assume that N.C. suffered physical manifestations of his emotional distress. Cook points out that Minnesota is a notice pleading state, meaning it has a low pleading threshold, and she argues that the Court should infer physical manifestations from phrases like "pain and suffering," "other items of damages," "physical . . . health and safety," and "medical expenses." (Doc. 58 at 3 (quoting Doc. 35-3 ¶¶ 76, 84, 86).) But as *Garvis* demonstrates, notice pleading does not mean that courts may assume facts absent from the underlying complaint. It

simply means that a Minnesota plaintiff's allegations need only be possible, rather than plausible as in federal court. *See Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 602 (Minn. 2014) (declining to adopt federal plausibility standard and holding that it need only be "possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded").

Cook also suggests that Minnesota law's physical manifestation requirement is "problematic" because "no clear line can be drawn between mental and physical injury." *See Quill v. Trans World Airlines, Inc.,* 361 N.W.2d 438, 443 (Minn. Ct. App. 1985) (expressing disapproval of Minnesota's "physical injury or symptom requirement" for negligent infliction of emotional distress claims but ultimately applying the requirement). (Doc. 58 at 2–3.) Even so, the Court may not disregard Minnesota law. *See, e.g.*, *Olmsted Med. Ctr. v. Cont'l Cas. Co.*, 65 F.4th 1005, 1008, 1010 (8th Cir. 2023) (explaining that "decisions by the Minnesota Supreme Court are binding" when a federal court is sitting in diversity and Minnesota is the forum state). Nor may it ignore unambiguous policy language like the Deluxe Endorsement's definition requiring a predicate bodily injury, sickness, or disease. *See, e.g.*, *W3i Mobile*, 632 F.3d at 436 (rejecting interpretation that "would require [the court] to ignore [a] clause, contrary to Minnesota's rule[s] of contract interpretation").

Finally, the parties discuss *TIG*, 2023 WL 7001760, at *1. (Doc. 55 at 17; Doc. 61 at 10–11.) There, an insurance company sued seeking a declaration that its policies do not cover the claims of several intervenors who alleged that they were sexually abused by a priest. *Id.* Judge Eric C. Tostrud found that the claims of two

intervenors failed at summary judgment because, although some of their allegations included physical manifestations of their psychological injuries, they cited "no evidence—affidavits, medical records, etc.—to corroborate these allegations." *Id.* at *13. The victims argued that a person experiences bodily injury per se if he is sexually abused by way of physical contact. *Id.* But Judge Tostrud found this argument unpersuasive. He observed that "[n]o Minnesota case so holds," and "[t]o apply this rule would be to ignore Minnesota's injury-focused inquiry." *Id.* The intervenors also cited "multiple research papers highlighting the links between childhood trauma and adult mental health, suicide, stress, and the corresponding economic cost." *Id.* at *14. But while Judge Tostrud believed these were "fair and reasonable points," he found that "to rely on these authorities to deny summary judgment here would be to ignore the controlling Minnesota rule that emotional distress is not 'bodily injury' unless that emotional distress is accompanied by appreciable physical manifestations." *Id.*

The Court agrees with Judge Tostrud's analysis. Though the Court does not doubt that the events at issue were emotionally scarring for N.C., the Court may not ignore that the plain language of the policy and controlling Minnesota law require, at a minimum, a physical manifestation of N.C.'s emotional distress. Without such an allegation, the Court must find that the harm to N.C. is not arguably covered by the CGLC Form.

The Court therefore concludes that PIIC has no duty to defend Bridges and

grants PIIC's motion for summary judgment.[2]

## III.    ATTORNEY FEES

Next, the Court addresses Bridges' counterclaim for a declaratory judgment that PIIC must pay Bridges' attorney fees and expenses incurred in this declaratory judgment action "irrespective of the outcome." (Doc. 18 ¶¶ 43–49; Doc. 45 at 2.) Under Minnesota law, each party bears its own attorney fees unless the insurer has breached a duty to defend or there is a statutory or contractual exception. *In re Silicone Implant Ins. Coverage Litig.*, 667 N.W.2d 405, 422 (Minn. 2003). PIIC has not breached any duty to defend Bridges, and Bridges does not argue that attorney fees are authorized by statute, so the Court looks to the policy's fee-shifting provision. It says:

> [PIIC] will pay, with respect to any claim [PIIC] investigate[s] or settle[s], or any "suit" against an insured [PIIC] defend[s]: . . . [a]ll reasonable expenses incurred by the insured at [PIIC's] request to assist [PIIC] in the investigation or defense of the claim or "suit" . . . .
>
> "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

(Doc. 41-4 at 397, 405.)

Bridges asserts that under Minnesota law "provisions like these" provide for fee-shifting when "the policyholder defends a declaratory-judgment action initiated by the insurer." (Doc. 47 at 28.) In support, Bridges cites *Security Mutual Casualty Company*

---

[2] Because the Court finds that the CGLC Form does not cover the alleged injuries, the Court need not address the parties' arguments about the Abuse or Molestation Exclusion to the CGLC Form.

*v. Luthi*, 226 N.W.2d 878 (Minn. 1975), and *Atlantic Mutual Insurance Company v. Judd Company*, 380 N.W.2d 122 (Minn. 1986).

In *Luthi*, the Minnesota Supreme Court found that the insurer had a duty to defend the insured and was required to reimburse the insured for its attorney fees from its successful defense of the declaratory action. 226 N.W.2d at 883. The fee-shifting provision provided that the insurer would "pay all expenses incurred by the [insurer] for investigation, adjustment and defense, and reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the [insurer's] request." *Id.* at 881. The court found that this language applied because the insured's attorney fees were "incurred at the [insurer's] request." *Id.* at 885. The court also explained that public policy considerations favored reimbursement. *Id.* at 884–85. In its view, "[t]o deny an insured the legal fees incurred in establishing coverage would work a substantial hardship in many instances. The insured would be compelled to bear litigation costs in situations where he contracted in order to avoid just such an expense." *Id.* at 885.

The Minnesota Supreme Court reached the same conclusion in *Judd*, 380 N.W.2d at 126. After finding that the insurer had a duty to defend the insured, the court found that the insurer was required to pay the insured's attorney fees. *Id.* The fee-shifting provision provided that the insurer would pay "reasonable expenses incurred by the insured at the [insurer's] request in assisting the [insurer] in the investigation of any claim or suit." *Id.* The court explained, without further analysis, that it "ha[s] held that similar policy language authorized payment of attorney fees to an insured for the successful defense of a declaratory judgment action initiated by an insurer." *Id.* (citing

*Luthi*, 226 N.W.2d at 883–85).

These cases are distinguishable. Bridges has not "*successful[ly]* defen[ded]" this declaratory judgment action, *id.* (emphasis added), so their policy concerns do not apply, *see Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1398 n.16 (8th Cir. 1996) ("The policy considerations supporting the recovery of attorneys' fees in declaratory judgment action[s], however, extend only to those cases where there is a duty to defend."). Moreover, the policy language here is significantly different from the language that formed the foundation of *Luthi*'s holding. *See Church Mut. Ins. v. Redeemer Lutheran Church*, No. C0-97-2002, 1997 WL 878651, at *2 (Minn. Ct. App. Apr. 28, 1998) (observing that "the *Luthi* holding was based on the supreme court's construction of the insurance policy" (citing *Grain Dealers Mut. Ins. v. Cady*, 318 N.W.2d 247, 251 n.10 (Minn. 1982)). Bridges' policy does not cover all reasonable expenses incurred at PIIC's request, full stop. It reimburses "reasonable expenses incurred . . . at [PIIC's] request *to assist [PIIC] in the investigation or defense of the claim or 'suit.'*" (Doc. 41-4 at 397 (emphasis added).) Bridges and PIIC are adversaries in this action, so Bridges' attorneys have not "assist[ed]" PIIC. (*Id.*) PIIC is prosecuting this action, not "investigat[ing]" or "defen[ding]" it. (*Id.*) And this action is neither an insurance "claim" nor a "suit" within the policy's definition of that word because PIIC does not seek "damages." (*Id.* at 397, 405.) *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co.,* No. 10-4949 (JRT/TNL), 2018 WL 2247258, at *3 (D. Minn. May 16, 2018) (finding that policy language did not provide for attorney fees because suit to recover deductibles was not "a claim or suit that [insurer] defended"

- 14 -

and insurer was "not engaged in defending, investigating, or settling any underlying claim or suit").

As more recent cases have made clear, when no statutory or contractual fee-shifting provision applies, "attorney fees are recoverable in a declaratory judgment action *only* if . . . . the insurer has breached the insurance contract in some respect—usually by wrongfully refusing to defend the insured." *Am. Standard Ins. v. Le*, 551 N.W.2d 923, 924 (Minn. 1996) (emphasis in original). The Court therefore finds that Bridges is not entitled to attorney fees and costs in this declaratory judgment action.

## IV.  ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.  Plaintiff's Motion for Summary Judgment [Doc. 37] is **GRANTED**;

2.  Defendants' Motions for Summary Judgment [Docs. 32 & 45] are **DENIED**.

LET THE JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  September 11, 2025                    /s/ Susan Richard Nelson
                                             SUSAN RICHARD NELSON
                                             United States District Judge